MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMILCAR ROMEO PEREZ, FIDEL AVILA
PEREZ, and LUIS EDUARDO GUARCAX
CHILEL, *individually and on behalf of others
similarly situated,*

                            *Plaintiffs*,

            -against-

THIRD AVENUE FOOD CORP. (D/B/A
TIVOLI CAFE), GUS KASSIMIS, and JAIME
DOE A/K/A JIMMY,

                          *Defendants.*

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

      Plaintiffs Amilcar Romeo Perez, Fidel Avila Perez, and Luis Eduardo Guarcax Chilel,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as

against Third Avenue Food Corp. (d/b/a Tivoli Cafe), ("Defendant Corporation"), Gus Kassimis

and Jaime Doe a/k/a Jimmy, ("Individual Defendants"), (collectively, "Defendants"), allege as

follows:

## NATURE OF ACTION

      1.      Plaintiffs are former employees of Defendants Third Avenue Food Corp. (d/b/a Tivoli

Cafe), Gus Kassimis, and Jaime Doe a/k/a Jimmy.

2.      Defendants own, operate, or control an upscale restaurant, located at 283 3rd Ave, New York, NY 10010 under the name "Tivoli Cafe".

3.      Upon information and belief, individual Defendants Gus Kassimis and Jaime Doe a/k/a Jimmy, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs Amilcar Romeo Perez and Luis Eduardo Guarcax Chilel were employed as cooks at the restaurant located at 283 3rd Ave, New York, NY 10010.

5.      Plaintiff Avila was ostensibly employed as a delivery worker. However, he was required to spend a considerable part of his work day performing non-tipped duties, including but not limited to washing the dishes and preparing food (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.     Defendants employed and accounted for Plaintiff Avila as a delivery worker in their payroll, but in actuality his duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid Plaintiff Avila at a rate that was lower than the required tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Avila's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Avila's actual duties in payroll records by designating him as a delivery worker instead of a non-tipped employee. This allowed Defendants to avoid paying Plaintiff Avila at the minimum wage rate and enabled them to pay him below the tip-credit rate.

14.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiff Avila's and other tipped employees' tips and made unlawful deductions from Plaintiff's and other tipped employees' wages.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the

"Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate an upscale restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

21.    Plaintiff Amilcar Romeo Perez ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in Bronx County, New York.

22.    Plaintiff Perez was employed by Defendants at Tivoli Cafe from approximately January 2017 until on or about September 13, 2020.

23.    Plaintiff Fidel Avila Perez ("Plaintiff Avila" or "Mr. Avila") is an adult individual residing in New York County, New York.

24.     Plaintiff Avila was employed by Defendants at Tivoli Cafe from approximately August 2017 until on or about September 4, 2020.

25.     Plaintiff Luis Eduardo Guarcax Chilel ("Plaintiff Guarcax" or "Mr. Guarcax") is an adult individual residing in Bronx County, New York.

26.     Plaintiff Guarcax was employed by Defendants at Tivoli Cafe from approximately October 2018 until on or about September 13, 2020.

*Defendants*

27.     At all relevant times, Defendants owned, operated, or controlled an upscale restaurant, located at 283 3rd Ave, New York, NY 10010 under the name "Tivoli Cafe".

28.     Upon information and belief, Third Avenue Food Corp. (d/b/a Tivoli Cafe) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 283 3rd Ave, New York, NY 10010.

29.     Defendant Gus Kassimis is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Gus Kassimis is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Gus Kassimis possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.     Defendant Jaime Doe a/k/a Jimmy is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jaime Doe a/k/a Jimmy is sued individually in his capacity as a manager of Defendant Corporation. Defendant Jaime Doe

a/k/a Jimmy possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

31.     Defendants operate an upscale restaurant located in the Grammercy neighborhood of Manhattan in New York City.

32.     Individual Defendants, Gus Kassimis and Jaime Doe a/k/a Jimmy, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

33.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

34.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

35.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

36.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

37.     Upon information and belief, Individual Defendant Gus Kassimis operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporation for his own benefit as the sole or majority shareholder,

    e)  operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

    f)  intermingling assets and debts of his own with Defendant Corporation,

    g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

38.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

39.     In each year from 2017 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

40.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

41.     Plaintiffs are former employees of Defendants, who were employed as cooks and ostensibly as a delivery worker.  However, the delivery worker spent over 20% of each shift performing the non-tipped duties described above.

42.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Amilcar Romeo Perez*

43.     Plaintiff Perez was employed by Defendants from approximately January 2017 until on or about September 13, 2020.

44.     Defendants employed Plaintiff Perez as a cook.

45.     Plaintiff Perez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.     Plaintiff Perez's work duties required neither discretion nor independent judgment.

47.     From approximately January 2017 until on or about December 2019, Plaintiff Perez worked from approximately 6:00 a.m. until on or about 4:00 p.m., 6 days a week (typically 60 hours per week).

48.     From approximately January 2020 until on or about September 13, 2020, Plaintiff Perez's schedule varied, but he worked 5 days a week (typically 35 hours per week).

49.     Throughout his employment, Defendants paid Plaintiff Perez his wages by a combination of company check and personal check.

50.     From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Perez $14.00 per hour.

51.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Perez $15.00 per hour.

52.     From approximately January 2019 until on or about September 2020, Defendants paid Plaintiff Perez $17.00 per hour.

53.     Defendants never granted Plaintiff Perez any breaks or meal periods of any kind, except in 2017 when he was given 1 hour break a day.

54.     Nevertheless, from 2018 through 2020, Defendants deducted an hour daily from Plaintiff Perez's weekly paycheck for meal breaks he never was allowed to take.

55.     Prior to May 2020, Plaintiff Perez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

56.     Although, starting in May 2020, Defendants required Plaintiff Perez to track his start and stop times, the time tracking machines only worked on weekdays and did not correctly reflect his hours worked.

57.     In addition, in order to get paid, Plaintiff Perez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

58.     On a number of occasions, Defendants required Plaintiff Perez to sign a document, the contents of which he was not allowed to review in detail.

59.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

60.     Defendants did not provide Plaintiff Perez an accurate statement of wages, as required by NYLL 195(3).

61.     In fact, Defendants adjusted Plaintiff Perez's paystubs so that they reflected inaccurate wages and hours worked.

62.     Defendants did not give any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

63.     Defendants required Plaintiff Perez to purchase "tools of the trade" with his own funds—including spatulas.

*Plaintiff Fidel Avila  Perez*

64.     Plaintiff Avila was employed by Defendants from approximately August 2017 until on or about September 4, 2020.

65.     Defendants ostensibly employed Plaintiff Avila as a delivery worker.

66.     However, Plaintiff Avila was also required to spend a significant portion of his work day performing the non-tipped duties described above.

67.     Although Plaintiff Avila ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

68.     Plaintiff Avila regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

69.    Plaintiff Avila's work duties required neither discretion nor independent judgment.

70.    From approximately August 2017 until on or about August 2018, Plaintiff Avila worked from approximately 8:00 a.m. until on or about 4:00 p.m., 6 days a week (typically 48 hours per week).

71.    From approximately September 2018 until on or about March 15, 2020, Plaintiff Avila worked from approximately 6:00 a.m. until on or about 3:00 p.m., 4 days a week and from approximately 5:00 a.m. until on or about 3:00 p.m., 2 days a week (typically 56 hours per week).

72.    From approximately March 16, 2020 until on or about September 4, 2020, Plaintiff Avila worked from approximately 7:00 a.m. until on or about 3:00 p.m., 2 days a week and from approximately 7:00 a.m. until on or about 2:00 p.m., 2 days a week (typically 30 hours per week).

73.    From approximately August 2017 until on or about July 2020, Defendants paid Plaintiff Avila his wages in cash.

74.    From approximately July 2020 until on or about September 4, 2020, Defendants paid Plaintiff Avila his wages by personal check.

75.    From approximately August 2017 until on or about March 15, 2020, Defendants paid Plaintiff Avila $9.50 per hour.

76.    From approximately March 16, 2020 until on or about September 4, 2020, Defendants paid Plaintiff Avila $7.50 per hour.

77.    Plaintiff Avila's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

78.    For example, Defendants required Plaintiff Avila to work an additional 30 minutes to 1 hour past his scheduled departure time two times a month, and did not pay him for the additional time he worked.

79.     Defendants never granted Plaintiff Avila any breaks or meal periods of any kind.

80.     Plaintiff Avila was never notified by Defendants that his tips were being included as an offset for wages.

81.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Avila's wages.

82.     Defendants withheld a portion of Plaintiff Avila's tips; specifically, Defendants withheld  the delivery fee, around 10% of the total value of the order.

83.     Plaintiff Avila was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

84.     Defendants required Plaintiff Avila to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

85.     On a number of occasions, Defendants required Plaintiff Avila to sign a document, the contents of which he was not allowed to review in detail.

86.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Avila regarding overtime and wages under the FLSA and NYLL.

87.     Defendants did not provide Plaintiff Avila an accurate statement of wages, as required by NYLL 195(3).

88.     Defendants did not give any notice to Plaintiff Avila, in English and in Spanish (Plaintiff Avila's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

89.     Defendants required Plaintiff Avila to purchase "tools of the trade" with his own funds—including an electric bike, a delivery bag, and bike maintenance.

*Plaintiff Luis Eduardo Guarcax Chilel*

90.    Plaintiff Guarcax was employed by Defendants from approximately October 2018 until on or about September 13, 2020.

91.    Defendants employed Plaintiff Guarcax as a cook.

92.    Plaintiff Guarcax regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

93.    Plaintiff Guarcax's work duties required neither discretion nor independent judgment.

94.    From approximately October 2020 until on or about February 15, 2020, Plaintiff Guarcax worked from approximately 7:00 p.m. until on or about 5:00 a.m., 5 days a week and from approximately 6:00 p.m. until on or about 6:00 a.m., 1 day a week (typically 62 hours per week).

95.    From approximately February 16, 2020 until on or about February 29, 2020, Plaintiff Guarcax worked from approximately 6:00 p.m. until on or about 12:00 a.m., 3 to 4 days a week (typically 18 to 24 hours per week).

96.    From approximately March 1, 2020 until on or about March 14, 2020, Plaintiff Guarcax worked from approximately 3:00 p.m. until on or about 12:00 a.m., 2 days a week and from approximately 6:00 p.m. until on or about 12:00 a.m., 3 days a week (typically 36 hours per week).

97.    Throughout his employment, Defendants paid Plaintiff Guarcax his wages by personal check.

98.    From approximately October 2018 until on or about February 15, 2020, Defendants paid Plaintiff Guarcax a fixed salary of $850 per week.

99.    From approximately February 16, 2020 until on or about September 13, 2020, Defendants paid Plaintiff Guarcax $18.00 per hour.

100.     Defendants never granted Plaintiff Guarcax any breaks or meal periods of any kind.

101.     Prior to July 2020, Plaintiff Guarcax was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

102.     Although, starting in July 2020 defendants required Plaintiff Guarcax to track his start and stop times, the time tracking machines only worked on weekdays and did not correctly reflect his hours worked.

103.     In addition, in order to get paid, Plaintiff Guarcax was required to sign a document in which Defendants misrepresented the hours that he worked per week.

104.     On a number of occasions, Defendants required Plaintiff Guarcax to sign a document, the contents of which he was not allowed to review in detail.

105.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Guarcax regarding overtime and wages under the FLSA and NYLL.

106.     Defendants did not provide Plaintiff Guarcax an accurate statement of wages, as required by NYLL 195(3).

107.     In fact, Defendants adjusted Plaintiff Guarcax's paystubs so that they reflected inaccurate wages and hours worked.

108.     Defendants did not give any notice to Plaintiff Guarcax, in English and in Spanish (Plaintiff Guarcax's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

109.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week

without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

110.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

111.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

112.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

113.    Defendants required Plaintiff Avila and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

114.    Plaintiff Avila and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

115.    Plaintiff Avila's duties were not incidental to his occupation as a tipped worker, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

116.    Plaintiff Avila and all other tipped workers were paid below the required tip-credit rate by Defendants.

117.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiff Avila's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

118.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

119.    In violation of federal and state law as codified above, Defendants classified Plaintiff Avila and other tipped workers as tipped employees, and paid them at a rate that was below the required tip-credit rate, when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

120.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

121.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

122.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

123.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

124.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

125.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

126.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

127.     On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

128.     Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

129.     Defendants paid Plaintiffs their wages in a combination of cash, personal check, and company check.

130.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

131.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

132.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

133.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

134.     Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

135.     Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

136.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

137.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been

subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

138.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

139.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

140.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

141.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

142.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

143.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

144.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

145.     Plaintiffs (and the FLSA Class members)were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

146.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

148.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

149.    Plaintiffs (and the FLSA Class members)were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

150.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

151.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

152.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

153.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

154.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

155.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

156.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

157.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

158.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

159.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

160.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

161.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

162.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

163.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

164.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

165.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

166.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

167.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

168.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

169.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

170.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

171.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

### OF THE NEW YORK LABOR LAW

172.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

173.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

174.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

175.    Defendants unlawfully misappropriated a portion of Plaintiff Avila's tips that were received from customers.

176.     Defendants knowingly and intentionally retained a portion of Plaintiff Avila's tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiff Avila was damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

177.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

178.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

179.     Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meal breaks they never took .

180.     The deductions made from Plaintiffs' wages were not authorized or required by law.

181.     Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

182.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

183.     Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

184.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the

FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

        November 23, 2020

                                MICHAEL FAILLACE & ASSOCIATES, P.C.

                        By:     _____/s/ Michael Faillace_____
                                Michael Faillace [MF-8436]
                                60 East 42nd Street, Suite 4510
                                New York, New York 10165
                                Telephone: (212) 317-1200
                                Facsimile: (212) 317-1620
                                *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

September 23, 2020

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Amilcar Romeo Perez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     23 de Septiembre 2020

*Certified as a minority-owned business in the State New York*    1

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

September 23, 2020

BY ELECTRONIC SIGNATURE

TO:      Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Fidel Avila Perez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     23 de Septiembre 2020

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                           Telephone: (212) 317-1200
New York, New York 10165                                            Facsimile: (212) 317-1620
Faillace@employmentcompliance.com

November 19, 2020

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Luis Eduardo Guarcax Chilel

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     19 de noviembre 2020

*Certified as a minority-owned business in the State New York*                    1